Good afternoon, Your Honors. My name is Karen Bucher. I represent the appellant, Mr. Roel Escobar. In this case, Mr. Escobar wanted to impeach the testimony of Valerie Flores, the key government witness, by showing that her testimony was incredible by her use of PCP. Counsel, the problem I have, just speaking for myself, with your argument in this case, is I have difficulty seeing why there was prejudice, even if we didn't have the high EMPA hurdle to jump. The victim who survived identified your client as the shooter, and there were other pieces of evidence that also pointed to his guilt, such as the fact that he never returned to his job. He fled without picking up his paycheck and so forth. I don't understand how that one additional piece of cross-examination would have made any difference. Well, Ms. Flores was a key witness. She was the only witness that testified as to motive to the crime. The prosecution theory was the motive for the shooting was that Ms. Flores and her mother had rejected the sexual advances of Mr. Escobar. But they don't have to prove motive. That's not an element of the crime. So if there had been no such evidence of motive whatsoever, but the survivor had said, that's the guy who shot me, and the other evidence was there, that would have been sufficient, wouldn't it? Well, the problem with Mr. Cruz's testimony... So let's say yes or no question. Would it have been sufficient for the prosecution to prove that the crime had occurred without demonstrating any motive? I'm sorry, Your Honor, you're correct. Okay. So I guess my question to you is, in view of the strength of the case with regard to the crime, not the motive, but with regard to the crime itself, I have difficulty seeing where the prejudice lies. I disagree, Your Honor. Mr. Cruz, he's the victim that identified Mr. Escobar as the shooter. We have a lot of problems with his testimony. First of all, he said the apartment was very dark and he was focusing on the rifle. And he was in a state of shock. He was unable to identify what the shooter was wearing. And later on that evening, he told a doctor that he consumed three to four beers, so there was something wrong with his memory. And also, what I think is most significant, when the police came to him with a picture of Mr. Escobar, they showed him just a single picture of him, not like a six-pack or anything like that. And they showed him the picture, is this Mr. Escobar, and he said yes. And also, another thing that's important and I think is significant, Mr. Escobar testified that he saw Mr. Cruz stumbling down the street while he was picking up his children from his mother-in-law's house, and he was placing them in the car. So Mr. Cruz did see Mr. Escobar that evening. And when he was questioned by the police, he had been shot. He was disoriented. And he might have mentioned his name because he had just seen him. There's a lot of problems with his testimony, and the jury had a problem with his testimony too. With Mr. Cruz's testimony, they specifically asked for a readback concerning his description of the initial break-in and also, more importantly, his identification of Mr. Escobar as a shooter. And also, there wasn't any other evidence connecting him to the crime. He did go to Guatemala. And all the evidence that was presented --- Roberts. Leaving his dinner on the table, right? Yeah, I thought about that, Your Honor. When I go on vacation, I make sure my house is clean because I want to come back. But when I go to my neighbor's house and I feed their cats and dogs when they're gone, there's food everywhere. There's dishes in the sink. I'm not saying whether there's a rational explanation for it. It is interesting. He doesn't pick up his paycheck, leaves, and even leaves a meal sitting on the table. There's a reason for that. He did leave on vacation. But he did find out from his mother-in-law, Ms. Cummings, that he was a suspect in this crime. And he stayed back for fearing of being arrested. But the Saturday morning of Labor Day weekend, he drove over to his co-worker's house, told him he was going to Guatemala. I'm leaving my car with you for safekeeping. And he left. And it was according to the evidence, it was a preplanned vacation. And his employer didn't seem surprised about this either. Even though he didn't give notice, he says most people don't give notice when they go on vacation. He said they should give notice. I would like that. But he didn't do so. And he didn't return for fear because he knew that he was a suspect. His mother-in-law had called and told him. Did you want to take some time for rebuttal? Yes, Your Honor. Okay. Thank you. We've got a fair amount of time, and you can use it as you wish. We'll hear from the State at this time. Mr. Glassman. Thank you, Your Honor, and may it please the Court. David Glassman for the Respondent. I'd like to first address Judge Graber's point briefly as to prejudice before I move to the merits. And that is, as you correctly point out, Your Honor, there is not only identification of the petitioner by a surviving eyewitness and victim, but it is evidence that was emphatic. That is, the witness testified that he was positive that it was the petitioner who committed the crime. And I don't think in terms of the limited role of a reviewing court in habeas corpus, it is enough to point out that the witness was cross-examined or that there were potential possible inconsistencies in the testimony. The standard in this AEDPA context is quite high. And one would have to say that notwithstanding the dispute as to the testimony of Ms. Flores, it is reasonably probable that this petitioner would have been acquitted in the absence of this evidence. And that simply cannot be said, not only in light of the minimal nature of the claim itself, but also the overwhelming evidence of guilt. And that's that. Do you have the same argument if this were an eyewitness? Well, it would not be the same argument, potentially, because the evidence would be different. But it's an argument that's only bolstered by the fact that there is an eyewitness here in addition to the testimony of Flores. Suppose hypothetically you have a crime and you have two eyewitnesses, two witnesses who said they witnessed the crime. One is perfectly coherent, good citizen, et cetera, et cetera. The other one has the same or similar drug history that this witness did. Would it be okay to restrict cross-examination of the second witness? It would depend, Your Honor, on the reason that cross-examination was restricted. And that brings me to the merits of this claim. The restriction, I think it's interesting both today at oral argument and in the briefs that the argument is made, and I think it's really the exclusive argument of the Petitioner, that it was the importance of this witness, the asserted importance of the witness, that rendered the proposed cross-examination acceptable and admissible. And I would submit that that is not the entire calculation that goes on in determining whether evidence is admissible. To return to the context in which this arose, the witness has testified as to her observations of the Petitioner. So why isn't it completely fair game to explore whether that recollection is tainted by an altered state of consciousness from the use of drugs? Why wouldn't that ordinarily be admissible? It would be – it might be admissible, Your Honor, depending upon the showing that was made that would allow it, just as I don't think this Court would entertain a routine claim that any witness can be questioned about potential, not only potential prior drug use, but the claim in this case is far more than that necessarily. It is that this witness at the time of these events was ostensibly operating under the delusional effects of PCP. And the only support for that, and it's clear that this is an issue that's been sandbagged in the record, the only support for that is a statement by the defense attorney that he has accessed a probation report relative to this witness written 8 years after the crime in which the witnesses allegedly made a statement about drug use, not drug use around the time of this crime, but prior drug use. That in and of its – and I think if you read this revelation in context, it's clear that the party – that the opposing party and the Court are taken by surprise by this, and it's pointed out that that disclosure is in fact a crime. One cannot access a probation report in California absent limited exceptional circumstances. And so it's entirely unclear how it is that counsel for Mr. Escobar has gained access, apparently, if he is to be believed, to a probation report with respect to Ms. Flores. But putting that to the side. If the questioning instead had related to the time of the crime, wouldn't it have been fair game to say, you know, were you well-rested? Had you been using any mind-altering substance and so forth just to test the recollection at the time of the crime or at the time of the events being testified to? Certainly one can inquire into areas that reasonably relate to the ability to perceive and to recollect. But in this case, in order for this inference, in order for this testimony to be relevant, it seems to me there would have to be far more than I have come into possession of a probation report that indicates that the witness stated in 1990 that sometime in 1980, early 1981, she is using PCP, and that she is using it on a regular basis in 1981. Therefore, I have a sufficient basis on what I know not only to question her about it, but to argue to this jury that the witness was intoxicated or delusional or impaired, and this attorney was not prepared to do any of those things. He didn't have any of that information. He didn't have any other source for his claim. He didn't have any lawful source for the claim. He certainly didn't indicate that he was prepared to present any sort of expert testimony that would bolster that type of claim, which you would obviously  believe. I don't think it would, that any court would allow the attorney to regale the jury with stories about how this witness was or wasn't impaired based on a statement she may or may not have made about her drug use. And finally, two things. Notwithstanding the fact that there were these obstacles to presenting this evidence, she's asked the question in open court in the presence of the jury, and the jury learns that years later she is convicted of the sale of narcotics. So there certainly was the suggestion raised to the jury that the witness had problems in terms of her credibility stemming directly from her conviction, if nothing else. So for that reason, and because, as the Court has pointed out, she is not the only witness in this case, this is not a case warranting habeas review. And the final point I would like to make there is that, as the Court is aware, I have noted that Teague v. Lane is one of the barriers to relief in this case. There is a case cited by the Petitioner on, that has to do with the fundamental right of cross-examination, and that is the Davis v. Alaska case. And that is a case involving clearly relevant, obviously relevant cross-examination that was precluded by a trial court for reasons totally unrelated to its relevance. For policy reasons having to do with the fact that the witness about whom the defense wanted to ask questions of his probationary status was shielded from any of that by, I think, a state statute that made that sort of thing confidential. So that quite obviously impaired the defendant's ability to pursue admittedly relevant cross-examination. This is a case in which the immediate relevance, certainly based on the showing that was made, is not clear. And therefore, it is certainly not Davis v. Alaska that would warrant relief. And so finally, when you asked in the prior case, Judge Paez, how one defines unreasonableness in the AEDPA context, I would suggest that one looks at the circumstances of the ruling, as well as the treatment that the ruling has subsequently received, at least at this point. So in other words, we have judges evaluating this claim. Not as many as we should have had, because the petitioner elected not to present this claim to the State Appellate Court. But that I think the trial court's evaluation standing alone is not unreasonable, nor is the district court's. And so I think that's helpful. At least it's helpful when the courts deny relief, for me to point to that. When they don't, I'll point to something else. But anyway, that's all I have on the case. Roberts. I appreciate your insights. Thank you. Thank you for your argument. Rebuttal. Thank you, Your Honor. Your Honors. I'd like to point out, since there wasn't a last, say, court-reasoned decision, this Court reviews this record independently in determining whether it was a reasonable application of U.S. Supreme Court law. And I disagree. I think Davis v. Alaska is very similar to that case, to this case. In that case, the defense counsel wanted to present evidence that the witness was on probation to show that he had a motive to lie and to protect himself. And significantly, the Supreme Court found that since that witness was so important to the case, the accuracy and the truthfulness of the witness was paramount. So the defense attorney should have had the opportunity to discredit the testimony so that the jury can view the testimony and decide, was it reliable and was it truthful, and should we – how much weight we should provide on the testimony. And in this case as well, Mr. Escobar should have been able to discredit Ms. Flores because, in my opinion, she was a very important witness, and mainly because the jury did ask for the readback of Mr. Cruz's testimony, which tells me they had some problems with it. And I think without – if she had been impeached, there would have been a good chance that the verdict may have been different. And if there's no further questions? Roberts. I don't see any. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the last case on the calendar.
judges: Hawkins, Graber, Paez